# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

BUSTER LOUIS LACOUR,        )
#R21786,                              )
                                       )
               Plaintiff,    )
                                       )
vs.                                  )    **Case No. 17-cv-00453-NJR**
                                       )
T. DUCKWORTH,           )
SAM HENNRICH,          )
D. CRAIN,                 )
CHARLES FRICKE,        )
ZACHARY HARVEY,      )
ILLINOIS DEPT. OF CORRECTIONS, )
MENARD CORRECTIONAL CENTER, )
MAJOR EBONIE,           )
and LT. MENDOZA,       )
                                       )
                  Defendants.  )

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Buster Lacour, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 11). According to the First Amended Complaint,[1] Plaintiff was beaten by prison guards at Menard on March 15, 2017. (Doc. 11, pp. 1-35). The officials allegedly attempted to cover up their misconduct by charging Plaintiff with numerous prison rule violations and punishing him with disciplinary segregation. *Id.* He now claims that they conspired to violate his rights under the First, Eighth, and Fourteenth Amendments and Illinois state law. *Id.* Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 11, pp. 35-37; Doc. 12).

---

[1] Before the Court screened the original Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff submitted proposed amendments to it. (Doc. 7). The Court would not accept the piecemeal amendments but granted Plaintiff leave to file a First Amended Complaint. (Docs. 8-10). He did so on July 25, 2017. (Doc. 11). The Complaint (Doc. 1) is thus considered void and is superseded by the First Amended Complaint (Doc. 11).

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The First Amended Complaint survives screening.

## **First Amended Complaint**

Plaintiff describes himself as a seriously mentally ill (SMI) inmate, who should not be housed in isolation due to his condition. (Doc. 11, p. 5). Even so, he was placed in protective custody from March 1 - 15, 2017, and from June 22 - July 13, 2017. *Id*. He was also punished with disciplinary segregation from March 15 – June 15, 2017. (Doc. 11, pp. 12, 16). With the exception of one week, he remained confined in isolation from March 1 - July 13, 2017. *Id*.

According to prison policy, inmates held in isolation are allowed no movement outside of their cells, except for showers, medical call passes, scheduled mental health meetings, and visitations. (Doc. 11, p. 5). Pursuant to this policy, Plaintiff was denied time outside of his cell. (Doc. 11, pp. 5-6). He claims that the conditions of his confinement caused him to become depressed and resulted in the incident described herein. (Doc. 11, p. 7).

On March 15, 2017, Officer Hennrich approached Plaintiff's cell, requested his identification card, and demanded to see his mirror. (Doc. 11, p. 7). Plaintiff asked to know why, and Hennrich said, "I saw your broken mirror sticking out of your cell bars." *Id*. Plaintiff told the officer that he was mistaken and must be at the "wrong cell" because his mirror was brand new. *Id*.

Hennrich left and returned minutes later with Lieutenant Fricke, Sergeant Crain, and Officer Duckworth. (Doc. 11, pp. 7-8). Fricke ordered Plaintiff to "cuff up." (Doc. 11, p. 8). Plaintiff asked him to explain why. *Id*. Fricke responded, "[Y]our [sic] going to N2 seg." *Id*. Plaintiff described his response as follows: "Plaintiff, feeling some type of way, due to this defendant's unreasonable request, asked for a crisis team, and informed defendant, Fricke that he was on psych medication, he needs his meds because he was going through it." *Id*. Fricke then asked Plaintiff whether he was refusing to cuff up. *Id*. Before Plaintiff answered, Fricke, Crain, Duckworth, and Hennrich left the area. *Id*.

Moments later, they returned with Major Ebonie and Officer Harvey. (Doc. 11, p. 8). The officers again ordered Plaintiff to "cuff up." *Id*. When he repeated his request for a crisis team and medication, Ebonie responded, "No. Cuff up now!" *Id*. At this point, the defendants appeared aggravated, so Plaintiff replied, "I'll cuff up but, [sic] I aint [sic] trying to get beat up." (Doc. 11, pp. 8-9). He agreed to cuff up a "few minutes" later. (Doc. 11, p. 9).

As soon as the cuffs were secure, Ebonie and Fricke snatched Plaintiff by his neck, pushed the back of his head down "hard and fast," and rushed him out of the back door of the gallery into a hallway that divides the N1 and N2 Cell Houses. (Doc. 11, p. 9). Fricke then slammed Plaintiff's head into the mailboxes and began punching him in the chest. *Id*. At the same time, Fricke yelled, "[W]hen I tell you to cuff up, bitch, you cuff up!" *Id*. While still in the hallway, Ebonie, Fricke, and Crain were joined by the Orange Crush Tactical Team.[2] *Id*. Together, they "beat [P]laintiff about the body, slammed his head into the wall, and continued to violently assault him." *Id*. As they did so, Ebonie said, "Bitch you do what I say." *Id*.

Plaintiff sustained numerous injuries during the beating that required medical attention. (Doc. 11, p. 10). His forehead was bleeding, and his eye was swollen shut. *Id*. He was taken to the health care unit (HCU). *Id*.

Before being treated, the Orange Crush Tactical Team "snatched him back out of the HCU." (Doc. 11, p. 10). As he screamed and cried in pain, an unknown member of the team warned him to "shut your mouth" and "dont say shit bitch [sic]." *Id*. The team then dragged Plaintiff on the pavement to segregation in the prison's N2 Cell House. *Id*. He was taken upstairs into a secluded area, where he was beaten a second time. *Id*. This time, the team hit Plaintiff in the back of his head and chest and then slammed his head into the wall. *Id*. When Plaintiff complained of pain, the team stripped him of his shoes and clothing and disposed of it all. *Id*. The team then dragged Plaintiff down the gallery and placed him into Cell 46 "naked and battered." (Doc. 11, p. 11). Inmates in surrounding cells called out to Plaintiff to make sure he

---

[2] Plaintiff did not name any members of the Orange Crush Tactical Team as defendants in this action. All claims against these individuals are therefore considered dismissed without prejudice. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

was okay. *Id*. Unable to summon the energy to explain what happened, he simply said, "[T]hey jumped me, i'm [sic] losing consciousness." *Id*.

When Plaintiff regained consciousness, he was sitting in a chair "all beat up and bleeding." (Doc. 11, p. 11). All of the previously identified defendants, including Ebonie, were in the room. *Id*. They began questioning Plaintiff about why he had harmed himself. *Id*. Plaintiff stated, "[Y]a'll jumped me." *Id*. Defendants placed Plaintiff on suicide watch. *Id*.

The following day, Plaintiff saw a mental health professional (MHP), MHP Weatherfur,[3] who asked him what happened. (Doc. 11, p. 12). Plaintiff told Weatherfur about the incident. *Id*. Weatherfur notified internal affairs (IA). *Id*. The same day, IA officers met with Plaintiff, took his statement, and photographed his injuries. *Id*.

On March 21, 2017, Lieutenant Shaunbach[4] also interviewed Plaintiff and took his statement. (Doc. 11, p. 12). Following the investigation, Plaintiff was issued three disciplinary tickets, for which he received three months of disciplinary segregation that ended on June 15, 2017. (Doc. 11, pp. 12, 16). He was demoted to C-grade status on March 22, 2017, and promoted to B-grade status on June 22, 2017. (Doc.11, pp. 16, 18).

Plaintiff served his three months of disciplinary segregation in Menard's N2 Cell House (Cell 14 in Gallery 4). (Doc. 11, p. 12). He was denied all medical treatment for his injuries. *Id*. He was "continuously" harassed by "other c/o's, acting in concert with defendants, through a meeting of the minds." *Id*. Plaintiff identifies Mendoza as one of these defendants but does not describe the retaliatory actions taken against him by this defendant. (Doc. 11, p. 13). Plaintiff, along with other inmates, filed multiple grievances to complain of the "constant harassment." *Id*.

---

[3] Weatherfur is not named as a defendant in this action, and Plaintiff asserts no claims against this individual.
[4] Shaunbach is not a defendant in this action, and no claims are asserted against him.

Unfortunately, however, it only got worse. (Doc. 11, p. 13). Staff disposed of or delayed responses to Plaintiff's grievance(s) addressing the assault. *Id.* For more than a month, he received no mail from his family or friends. (Doc. 11, p. 15). The prison law library never sent him confirmation that his amended complaint was timely filed in June, prompting him to request an extension of the deadline. (Doc. 11, pp. 14-15). Duckworth also conducted a cell shakedown and "tore up" Plaintiff's sheets on July 23, 2017. (Doc. 11, p. 21 at n.3).

Further, after he was promoted to B-grade status on June 22, 2017, Plaintiff was subject to "new" rules governing the administrative of discipline that took effect on April 1, 2017. (Doc. 11, pp. 16-18) (citing 20 Ill. Admin. Code. § 504.130(a)(2)). Plaintiff maintains that he was subject to the new rules only because the adjustment committee delayed the issuance of its final disciplinary report by twenty-three days, *i.e.*, until April 14, 2017. (Doc. 11, pp. 19-20). The rules imposed harsher restrictions on inmate privileges. (Doc. 11, pp. 16-20). Specifically, Plaintiff was subject to phone and commissary restrictions that he challenged by writing Counselor Price and the warden.[5] (Doc. 11, p. 20). He received no response. *Id.* He was also denied grievance forms by various prison staff members throughout this same time period, including Ebonie, Crain, Fricke, Mendoza, Harvey, Duckworth, and Hennrich. (Doc. 11, pp. 6, 20). Plaintiff claims that the new rules regarding B-grade restrictions violate his Fourteenth Amendment rights and the Illinois Constitution. (Doc. 11, pp. 16-18, 20).

Plaintiff generally alleges that the conditions of his confinement at Menard have had an adverse psychological effect on him. (Doc. 11, p. 21). He suffers from "extreme paranoia and attention deficit disorder." *Id.* He expresses concern that he "may" become incompetent. *Id.* Even so, he was removed from SMI status without a hearing requiring his presence. *Id.*

---

[5] Neither of these individuals is identified as a defendant in this action, so all potential claims against both are considered dismissed without prejudice. *See* Fed. R. Civ. P. 10(a); *Myles*, 416 F.3d at 551-52.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has reorganized the claims in Plaintiff's *pro se* First Amended Complaint into the following enumerated counts:

**Count 1 -**   Eighth Amendment excessive force claim against Ebonie, Fricke, and Crain for beating Plaintiff on March 15, 2017.

**Count 2 -**   Eighth Amendment claim against Duckworth, Harvey, and Hennrich for failing to intervene and protect Plaintiff as he was beaten by prison officials on March 15, 2017.

**Count 3 -**   Eighth Amendment claim against Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich for failing to ensure that Plaintiff received medical care for the injuries he sustained on March 15, 2017.

**Count 4 -**   Eighth Amendment claim against Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich for ignoring Plaintiff's request for a crisis team on March 15, 2017.

**Count 5 -**   Claim against Defendants for placing Plaintiff, who is a seriously mentally ill (SMI) inmate, in segregation for prolonged periods of time without privileges or access to out-of-cell time, in violation of the First Amendment, the settlement agreement in *Rasho v. Baldwin*, and Illinois state law.

**Count 6 -**   Eighth and/or Fourteenth Amendment claim against Defendants for removing Plaintiff from SMI status.

**Count 7 -**   Fourteenth Amendment claim against Defendants for depriving Plaintiff of a protected liberty interest without due process of law by punishing him with three months of segregation for three disciplinary tickets he received on or around March 21, 2017.

**Count 8 -**   First Amendment retaliation claim against Defendants for harassing Plaintiff, interfering with his personal mail, interfering with his ability to file an amended complaint, and shaking down his cell.

**Count 9 -**   Conspiracy claim against Defendants under 42 U.S.C. § 1985 or

the common law.

**Count 10 -** Fourteenth Amendment claim against Defendants for mishandling Plaintiff's grievances, by denying access to them, disposing of them, ignoring them, and/or denying them.

**Count 11 -** Illinois state law claims against Defendants for the intentional infliction of emotional distress.

**Count 12** - Illinois state law claim for indemnification against the Illinois Department of Corrections and Menard Correctional Center.

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any claims that are mentioned in the First Amended Complaint but not identified above should be considered dismissed without prejudice from this action.**

## Count 1

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Robinson v. California*, 370 U.S. 660 (1962)). The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). The "core requirement" of an excessive force claim is that the prison guard "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010).

The allegations in the First Amended Complaint support an excessive force claim against the three defendants named in connection with this claim, *i.e.*, Ebonie, Fricke, and Crain. Plaintiff alleges that he was beaten by these defendants on March 15, 2017. (Doc. 11, pp. 1-35). At the time, he was in compliance with orders to "cuff up." *Id.* Count 1 is subject to further review against Ebonie, Fricke, and Crain. Because no other defendants are named in connection with this claim, Count 1 shall be dismissed with prejudice against the other named defendants.

**Count 2**

Prison officials may be liable for failing to intervene and take reasonable steps to stop the use of excessive force by fellow officers, if they have "a realistic opportunity to intervene and prevent the harm from occurring" but fail to do so. *Green v. Chvala*, 567 F. App'x 458 (7th Cir. 2014) (quoting *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). In the First Amended Complaint, Plaintiff alleges that Duckworth, Harvey, and Hennrich were present while Ebonie, Fricke, and Crain beat him on March 15, 2017. (Doc. 11, pp. 1-35). They stood by and watched as all three officers used excessive force against Plaintiff. These allegations support an Eighth Amendment failure to intervene claim against Duckworth, Harvey, and Hennrich. Because no other defendants are named in connection with this claim, Count 2 shall be dismissed with prejudice against the other named defendants.

**Count 3**

State officials also violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To state a claim, a plaintiff must demonstrate that he suffered from a serious medical condition (*i.e.*, objective standard) and the state official responded with deliberate indifference (*i.e.*, subjective standard). *Petties v. Carter*,

836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). The First Amended Complaint includes allegations against the defendants that satisfy both components of this claim for screening purposes.

During the initial beating that occurred on March 15, 2017, Plaintiff sustained a head injury, a bloody forehead, and a swollen eye. (Doc. 11, p. 10). His injuries were serious enough that he was taken to the HCU for treatment immediately after the first assault. (Doc. 11, pp. 10-11). Before he received any treatment, he was taken from the HCU and beaten a second time. *Id*. Plaintiff alleges that he ultimately received no medical care for the injuries he sustained that day. (Doc. 11, p. 12). These allegations, construed liberally in favor of Plaintiff for screening purposes, satisfy the objective and subjective components of this claim against all six defendants who were aware of his injuries and his lack of medical treatment for them, *i.e.*, Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich. Accordingly, Count 3 shall receive further review against them. No other defendants are named in connection with this claim, so it shall be dismissed with prejudice against Mendoza, the IDOC, and Menard.

## Count 4

An inmate's need for treatment of a mental illness may rise to the level of an objectively serious medical condition under the Eighth Amendment. *See, e.g., Rasho v. Elyea*, 856 F.3d 469 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). In the First Amended Complaint, Plaintiff does not identify his mental illness with specificity, although he refers to episodes of depression and paranoia. (Doc. 11, pp. 1-35). Further, the fact that he was given SMI status suggests that he suffers from an objectively serious medical condition. For screening purposes, the Court finds that the objective component of this claim is satisfied.

The First Amended Complaint also suggests that Plaintiff repeatedly requested intervention by the crisis team during his encounter with Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich on March 15, 2017. He explained that he was a SMI inmate who required psychotropic medications, but these defendants disregarded his requests for help. The Eighth Amendment does not give prisoners the right to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Whether these defendants took reasonable steps to address Plaintiff's pleas for help remains to be seen. At this stage, Count 4 shall receive further review against all six defendants. This claim shall be dismissed with prejudice against Mendoza, the IDOC, and Menard.

## Count 5

Plaintiff broadly asserts that the prison's policy of placing mentally ill inmates in isolation for prolonged periods of time infringes on his freedom of expression and right to access the courts under the First Amendment, runs afoul of the settlement agreement in *Rasho v. Baldwin*, and violates various state laws and regulations.

It is unclear why Plaintiff invoked the First Amendment in connection with this claim. In his First Amended Complaint, he complained of interference with his personal mail and his access to the courts during his confinement in segregation. However, he names no particular defendant in connection with either of these complaints. Liability under § 1983 hinges on personal involvement in a constitutional deprivation. *Rasho*, 856 F.3d at 478. Absent any indication of who was involved in these constitutional violations, the First Amendment claim fails.

Moreover, the interference that Plaintiff describes with his personal mail does not support a First Amendment claim against anyone. The Seventh Circuit has held that "an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Plaintiff allegedly received no mail for one month in disciplinary segregation. However, he does not allege that anyone actually sent him personal mail during this time period or indicate how many items were delayed. The First Amended Complaint does not describe the type of pattern that gives rise to a mail interference claim under the First Amendment.

His related claim for interference with legal mail and court access is also subject to dismissal. Plaintiff alleges that he was unable to file the amended complaint he originally prepared in this case, prompting him to request an extension of the filing deadline. This single incident supports no claim, particularly where Plaintiff demonstrated no harm as a result of it. Every claim for interference with court access requires "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Plaintiff describes no detriment. He requested an extension of the deadline for filing his amended complaint, and the Court granted his request.

Plaintiff's reference to the settlement agreement in *Rasho* suggests that he is instead challenging his prolonged detention in segregation without adequate mental health treatment under the Eighth Amendment. *See Rasho v. Baldwin*, No. 07-cv-1298-MMM (C.D. Ill. filed Nov. 7, 2007) (Docs. 710, 711-1). *Rasho* is a class action lawsuit that was filed in the United

States District Court for the Central District of Illinois by a group of mentally ill offenders who were denied adequate mental health treatment and subjected to extended periods of segregation that exacerbated their mental health problems. *Id*. The only relief sought in *Rasho* was injunctive relief. *Id*. According to a settlement agreement reached in that case, mentally ill offenders who are placed in disciplinary segregation for more than sixteen days are to receive "weekly unstructured out-of-cell time" of an amount equivalent to the time allowed for all other segregation inmates, unless the inmate's individual treatment plan calls for more out-of-cell time. (Doc. 711-1, p. 18, *Rasho*). Mentally ill offenders who are in segregation for more than sixty days must be given eight hours per week of out-of-cell time. (Doc. 711-1, pp. 18-20, *Rasho*). Inmates who seek damages based on their particular circumstances must proceed with a separate action. (Text Orders, dated 5/18/2016, 9/16/2016, 9/26/2016, *Rasho*).

Plaintiff challenges the conditions of his confinement as a mentally ill inmate. He does not name any of the defendants involved in the *Rasho* case in this action or seek enforcement of the settlement agreement in *Rasho*. Instead, he seeks both injunctive relief and monetary damages that stem from his denial of time outside of his cell, the denial of privileges, and his demotion in status.

This claim arises under the Eighth Amendment, not the First Amendment. Prison conditions violate the Eighth Amendment if they deprive inmates of basic human needs, such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Eighth Amendment claims that challenge the conditions of confinement have an objective and a subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). To satisfy the objective component of this claim, the conditions must have resulted in an unquestioned and

serious deprivation of basic human needs or deprived an inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. The subjective component of this claim is satisfied where the defendant acted with deliberate indifference to the inmate's health or safety. *See, e.g., Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 104. A prison official who acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions may be liable for deliberate indifference. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

The First Amended Complaint offers insufficient allegations to state an Eighth Amendment claim for unconstitutional conditions of confinement. The Court is unable to determine whether Plaintiff suffered from conditions of confinement that were objectively serious. Plaintiff vaguely describes the mental health issues that resulted from his placement in segregation with limited or no out-of-cell time. It is unclear whether this deprivation was absolute or intermittent. Without this basic information, the Court cannot assess whether his denial of time outside of the cell satisfies the objective component of this claim. Certainly, the denial of commissary, phone privileges, and status do not support an Eighth Amendment claim. Moreover, the First Amended Complaint does not suggest that any of the defendants exhibited deliberate indifference to the conditions. Plaintiff does not even allege that he complained to them about the conditions. Count 5 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 6**

The First Amended Complaint supports no claim against the defendants for stripping Plaintiff of his SMI status. Plaintiff names no one in connection with the claim. Liability under § 1983 requires personal involvement in a constitutional deprivation. *Rasho*, 856 F.3d at 478; *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); *Minix v. Canarecci*, 597 F.3d 824, 833

(7th Cir. 2010); *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Sanville*, 266 F.3d at 740. Although a defendant need not participate directly in the deprivation, he or she must have known about it, facilitated it, approved it, or turned a blind eye to it. *Rasho*, 856 F.3d at 478 (citations omitted). The First Amended Complaint does not indicate who was involved in the decision to change Plaintiff's SMI status with a hearing where he was present. Without further development of this claim, including the names of defendants associated with this decision, Count 6 cannot proceed against anyone. This claim shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 7

The First Amended Complaint states no Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law. Plaintiff was punished with three months of segregation as a result of three disciplinary tickets he received on March 21, 2017. (Doc. 11, pp. 1-35). In the context of prison disciplinary hearings, due process protections include: (1) advance written notice of the charges against the plaintiff; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Plaintiff neither disputes the validity of the disciplinary tickets he received nor complains that he was denied any due process protections in connection with his disciplinary hearing. (Doc. 11, pp. 1-35).

Moreover, no due process protections are triggered in the first place, unless Plaintiff had a protected liberty interest in avoiding segregation. A protected liberty interest arises when confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts generally consider two factors when making this determination: "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured." *Id*. at 743 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)) (emphasis in original). If the length of confinement in segregation is substantial and the conditions of confinement were unusually harsh, a liberty interest may arise. *Marion*, 559 F.3d at 697-98, n. 2.

Plaintiff was punished with three months in disciplinary segregation and an additional three weeks in protective custody. Even if the Court assumes without deciding that the length of his confinement in segregation supports a claim, the conditions do not. Plaintiff's complaints focus on the privileges he lost. Specifically, Plaintiff complains about his demotion to C-grade, his commissary restrictions, his phone restrictions, and his lack of access to time outside of his cell. The Constitution does not recognize an inmate's liberty interest in his status and privileges. *See Thomas v. Ramos*, 130 F.3d 754, 762 (1997) (no liberty interest in demotion to C-grade status and loss of commissary privileges); *Sandin v. Conner*, 515 U.S. 472 (1995) (no liberty interest in phone privileges). In addition, an inmate has no liberty interest in movement outside of his cell. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Absent any suggestion that Plaintiff was deprived of a protected liberty interest without due process of law, the Court finds no basis for a Fourteenth Amendment due process claim

against the defendants. Accordingly, Count 7 shall be dismissed without prejudice against the defendants for failure to state a claim upon which relief may be granted.

## Count 8

To state a retaliation claim under the First Amendment, a plaintiff must set forth a chronology of events from which retaliation may plausibly be inferred. *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987)). Where an inmate is alleging retaliation in the prison context, the Plaintiff must have engaged in some protected First Amendment activity (*e.g.*, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and allege that the protected activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action against him. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

Plaintiff describes what might be retaliatory acts in the wake of the March 15th incident, including interference with his personal mail, his attempts to file an amended complaint, or his attempts to file grievances. However, he fails to name any defendants in connection with this specific conduct. He also offers no indication that these allegedly retaliatory acts were motivated by his decision to exercise his First Amendments rights. Under the circumstances, the First Amended Complaint fails to state a claim of retaliation against the defendants and shall therefore be dismissed without prejudice.

## Count 9

The Court turns to Plaintiff's conspiracy claim against the defendants, which he brings pursuant to 42 U.S.C. § 1985. A § 1985 conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th

Cir. 1999). All of the defendants are members of the same entity, *i.e.*, the Illinois Department of Corrections, and were working in the IDOC's interest. They cannot be sued for conspiracy under § 1985. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[6] Accordingly, the § 1985 conspiracy claim in Count 8 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). Generally, "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date. . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). In the First Amended Complaint, Plaintiff alleges the Ebonie, Crain, Fricke, Harvey, Duckworth, and Hennrich all conspired to violate his rights under the Eighth Amendment and suggests that they worked together to cover up their misconduct on March 15, 2017. The common law conspiracy claim shall receive further review against these defendants.

However, the common law claim is dismissed without prejudice against Mendoza, who was not involved in the March 15th incident and whose later involvement is not described with sufficient detail to implicate this defendant in the conspiracy. The claim is dismissed with prejudice against the IDOC and Menard because these defendants are not "persons" who are subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (state and its agencies are not suable "persons" within the meaning of § 1983).

---

[6] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

## Count 10

The mishandling of grievances gives rise to no independent Fourteenth Amendment due process claim. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Count 10 shall therefore be dismissed with prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

## Count 11

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). The Court has original jurisdiction over this action. Because the federal and state claims arise from the same facts, the district court also has supplemental jurisdiction over the related state law claims for intentional infliction of emotional distress in Count 11 and indemnification in Count 12.

In order to state a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). This tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the

actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citations omitted).

At this early stage, the Court finds that the allegations support a claim for intentional infliction of emotional distress against Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich, the six defendants who were involved in the incidents on March 15, 2017. Count 10 shall therefore receive further review against these defendants. However, this claim shall be dismissed with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

### Count 12

To the extent Plaintiff seeks to enforce the State's obligation under Illinois law to indemnify its employees for any judgments entered against them, the state indemnification claim shall proceed. The Eleventh Amendment immunizes the State, its agencies, and its officials acting in their official capacities from a suit in federal court for money damages. *Will*, 491 U.S. at 71. *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990). However, suits against state officials in their individual capacities are permissible. *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 05190, 2016 WL 3227310 (N.D. Ill. 2016) (citing *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). Further, the "[S]tate's decision to indemnify its employees does not transform a suit

against individual defendants into a suit against the sovereign." *Id.* (citing *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991)). Under such circumstances, the doctrine of sovereign immunity does not bar Plaintiff's claims. *Id.* (citing *Wright v. Carter*, No. 14 C 09109, 2015 WL 4978688, at *6 (refusing to find that sovereign immunity barred indemnification claim where "Plaintiff merely explain[ed] . . . that the state is required by its own law to indemnify employees such as the IDOC defendants for any judgments that may be entered against them" and where it was "clear that the individual defendants will be the ones directly liable for any money judgment")). At this early stage, the indemnification claim against the IDOC shall proceed. This claim shall be dismissed with prejudice against all other defendants, including Menard.

### Pending Motions

1.  **Motion to Request Appointment of Counsel (Doc. 6)**

Plaintiff's Motion to Request Appointment of Counsel shall be **REFERRED** to a United States Magistrate Judge for a decision.

2.  **Motion for Preliminary Injunction (Doc. 12)**

Plaintiff's seeks preliminary injunctive relief in the First Amended Complaint (Doc. 11, p. 36) and Motion for Preliminary Injunction[7] (Doc. 12) filed on July 25, 2017. This motion shall be **REFERRED** to a United States Magistrate Judge for handling.

### Disposition

The **CLERK** is directed to **ADD** the **WARDEN of MENARD CORRECTIONAL CENTER (in his or her official capacity only)** as a defendant for the sole purpose of carrying out any injunctive relief that is ordered.

---

[7] The Court previously considered and denied Plaintiff's request for a temporary restraining order on July 26, 2017. (Doc. 13).

**IT IS HEREBY ORDERED** that the Complaint (Doc. 1) is **VOID**. It is superseded and replaced with the First Amended Complaint (Doc. 11).

**IT IS ORDERED** that **COUNT 1** is subject to further review against Defendants **EBONIE, FRICKE,** and **CRAIN**; **COUNT 2** is subject to further review against Defendants **DUCKWORTH, HARVEY,** and **HENNRICH**; **COUNTS 3**, **4, 9 (common law conspiracy claim only)**, and **11** are subject to further review against Defendants **EBONIE, FRICKE, CRAIN, DUCKWORTH, HARVEY,** and **HENNRICH**; and **COUNT 12** is subject to further review against Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS**. With the exception of the common law conspiracy claim in **COUNT 9** which is **DISMISSED** without prejudice against Defendant **MENDOZA,** all of the claims in this paragraph are otherwise **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 5, 6, 7,** and **8** are **DISMISSED** without prejudice and **COUNT 10** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that any claims set forth in the First Amended Complaint but not recognized herein are considered **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

With respect to **COUNTS 1, 2, 3, 4, 9, 11** and **12**, the Clerk of Court shall prepare for Defendants **DUCKWORTH, HENNRICH, CRAIN, FRICKE, HARVEY, EBONIE, ILLINOIS DEPARTMENT OF CORRECTIONS,** and **WARDEN of MENARD CORRECTIONAL CENTER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 11), and this Memorandum and

Order to each Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the Motion to Request Appointment of Counsel (Doc. 6) and for handling of the Motion for Preliminary Injunction (Doc. 12).

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 3, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**