IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BUSTER LOUIS LACOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-00453-NJR-DGW |
| | ) |
| T. DUCKWORTH, C/O SAM HENNRICH, D. CRAIN, CHARLES FRICKE, ZACHARY HARVEY, ILLINOIS DEPARTMENT OF CORRECTIONS, MAJOR EBONIE, WARDEN OF MENARD CORRECTIONAL CENTER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 59), which recommends that the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants (Doc. 49) be denied. The Report and Recommendation was entered on March 9, 2018. Defendants filed an objection on March 22, 2018 (Doc. 63). For the reasons set forth below, the Court adopts the Report and Recommendation.

### BACKGROUND

Plaintiff Buster Lacour, an inmate housed at Menard Correctional Center, originally filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 on May 1, 2017 (Doc. 1). Before the Court screened Lacour's original Complaint pursuant to 28 U.S.C. § 1915A, Lacour submitted several proposed amendments, leading the Court to grant

Lacour leave to file an amended complaint. Lacour filed a First Amended Complaint on July 25, 2017 (Doc. 11), which is the operative complaint in this matter.

In the First Amended Complaint, Lacour alleges that on March 15, 2017, Defendant Hennrich approached his cell, requested his identification card, and demanded to see his mirror (Doc. 11, p. 7). When Lacour asked why, Hennrich said, "I saw your broken mirror sticking out of your cell bars." (*Id.*). Lacour told the officer that he was mistaken and must be at the "wrong cell" because his mirror was brand new. Hennrich then left and returned with Defendants Fricke, Crain, and Duckworth. When Fricke ordered Lacour to "cuff up," Lacour told them he was on psych medication and he needed his meds. He also requested a crisis team. (*Id.*).

Lacour eventually agreed to "cuff up," despite repeating his request for a crisis team and medication (*Id.*, p. 9). Lacour claims he was then beaten by Defendants Ebonie, Fricke, and Crain while Defendants Duckworth, Harvey, and Hennrich were present and watched (*Id.*). Lacour alleges his forehead was bleeding and his eye was swollen shut as a result of the assault (*Id.*). He was taken to the health care unit (HCU), but before he could be treated, he was taken from the HCU by the Orange Crush Tactical Team and beaten a second time (*Id.*, p. 10). When Lacour complained of pain, the team stripped him and threw away his clothing and shoes (*Id.*). He claims he lost consciousness after being dragged, naked, to a cell (*Id.*, p. 11). When he regained consciousness, he found himself sitting in a chair with all of the named Defendants in the room (*Id.*). They began asking Lacour why he had harmed himself, which he denied doing, before putting Lacour on suicide watch (*Id.*).

Of particular relevance to Defendants' current motion, the First Amended Complaint states that Lacour sent a grievance regarding the March 15 assault "to the warden, grievance officer, and the ARB, simultaneously; Plaintiff upon filing this instant petition, received a response from the ARB on the grievance (in re the assault) sometime thereafter" (Doc. 11, p. 13).

After threshold screening of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Lacour was permitted to proceed on the following claims:

**Count 1:** Eighth Amendment excessive force claim against Ebonie, Fricke, and Crain for beating Plaintiff on March 15, 2017.

**Count 2:** Eighth Amendment claim against Duckworth, Harvey, and Hennrich for failing to intervene and protect Plaintiff as he was beaten by prison officials on March 15, 2017.

**Count 3:** Eighth Amendment claim against Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich for failing to ensure that Plaintiff received medical care for the injuries he sustained on March 15, 2017.

**Count 4:** Eighth Amendment claim against Ebonie, Fricke, Crain, Duckworth, Harvey, and Hennrich for ignoring Plaintiff's request for a crisis team on March 15, 2017.

**Count 9:** Common law Conspiracy claim against Ebonie, Crain, Fricke, Harvey, Duckworth, and Hennrich.

**Count 11:** Illinois state law claims against Defendants for the intentional infliction of emotional distress.

**Count 12:** Illinois state law claim for indemnification against the Illinois Department of Corrections and Menard Correctional Center.

On January 26, 2018, Defendants filed the instant motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 49). Lacour filed a response on February 9, 2018 (Doc. 52), as well as a second memorandum in opposition on March

7, 2018 (Doc. 54).¹ On March 8, 2018, Magistrate Judge Wilkerson held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and subsequently issued the Report and Recommendation currently before the Court, recommending that Defendants' motion be denied. Defendants objected to the Report and Recommendation on March 22, 2018 (Doc. 63).

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject or modify, in whole or in part, the magistrate judge's recommended decision. *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). In doing so, the Court has the discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

I. **Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants argue that Lacour failed to exhaust his administrative remedies when the only grievance he sent to the Administrative Review Board (ARB) was dated April 30, 2017, and received by the ARB on May 12, 2017 (Docs. 50, 50-2). The grievance, which describes the beating Lacour

---
¹ This second response was filed both out of time and without leave of court.

endured and the fact that Defendants threw out his clothing, did not have any responses from the institution on it or included with it (Doc. 50-2). Because it was incomplete, it was returned to Lacour with a request to provide the original grievance with the proper institutional responses (*Id.*). Given that Lacour filed his original complaint on May 1, 2017, before the ARB even received this incomplete grievance, Defendants assert that Lacour did not follow the proper procedure and did not exhaust his administrative remedies before filing suit.

Defendants also reference a second grievance Lacour submitted on March 21, 2017. According to Defendants, the Assistant Warden of Programs told Lacour the grievance was not submitted according to procedure and that he must resolve the issue with his counselor first (Docs. 50, 50-4). That grievance mostly related to Lacour's clothes being thrown away, though there is one reference to Lacour's excessive force claim in that he says "the C/Os beat me." (*Id.*). Because that grievance was never appealed to the ARB, Lacour did not fully exhaust his administrative remedies.

Finally, Defendants reference a letter Lacour sent to the ARB on May 8, 2017 (after he filed suit), in which they claim Lacour admits he did not exhaust his administrative remedies. In the letter, Lacour states that he sent an emergency grievance to Warden Lashbrook, who determined the grievance was not an emergency (Doc. 50-1). Lacour then sent the returned grievance to the law library for copies to be made, but the law library said they never received the documents. The letter further states that Lacour sent another grievance to his grievance counselor, who had yet to respond in almost two months (*Id.*). He also sent one to the grievance office "with no response yet so I [filed] a

lawsuit against the [Defendants]." (*Id.*). He further states that he's "sending you guys [the ARB] a copy of the grievance" so they would know "what's going on." (*Id.*).

In response, Lacour explains that he sent an emergency grievance to the Warden, who returned it to him as a non-emergency. He then took the grievance the Warden sent back and sent it to the law library, along with "a couple of affidavits from witnesses," and asked the library to make copies. However, the law library said they never received those documents.[2] Lacour then hand-wrote a copy of that grievance and sent it to the ARB along with his May 8, 2018 letter (Doc. 52, p. 6).

With regard to his March 21, 2017 grievance, Lacour explains that he first sent the grievance to the grievance officer, who informed Lacour he needed to go through his counselor (*see* Doc. 50-4). Lacour states that he resent the grievance to his counselor, who responded on April 18, 2017 (Doc. 52, p. 8). The counselor stated that she contacted property, "you received thermal top and 1 tank top. Unable to verify gym shoes. They are not on your inventory. Unable to verify the CO information." (*Id.*). Lacour admits he never sent this grievance to the Warden. He then filed suit on May 1, 2018.

## II. The *Pavey* Hearing

Magistrate Judge Wilkerson held a *Pavey* hearing on March 8, 2018 (Doc. 62). At the hearing, Lacour testified that he sent an emergency grievance to the Warden on March 21, 2017, to which she responded that it was not an emergency (*Id.*, p. 16).[3] He further testified he sent a second grievance on March 21, 2017, to the grievance officer,

---

[2] Lacour says he knows "for a fact" the officers who beat him up threw them away. "That's why [he] sent 1 grievance to Springfield, because Menard got a [reputation] of throwing grievances away." (Doc. 52).
[3] The grievance in the record shows a date of April 30, 2017, because, as noted above, Lacour made a handwritten copy on April 30, 2017, and sent it to the ARB (Doc. 62, p. 20; Doc. 50-1, pp. 1-; Doc. 54, p. 12).

then to his counselor (*Id.*, p. 18). When he got an answer back from his counselor on April 18, 2017,[4] Lacour testified that he sent it to the grievance office "within maybe a week" by wrapping it in a legal envelope and putting it in the door (*Id.*). Lacour heard nothing else in response (*Id.*, p. 19). Lacour then wrote a letter to the ARB on May 8, 2017, and included the hand-written copy of his emergency grievance to the Warden (*Id.*, p. 21; Doc. 50-1).

When asked why he filed this lawsuit before he got a response from the ARB, Lacour stated that as for the emergency grievance, "I figured I'll send it to the warden, get it back, and then that's when I sent it out to get copies and it just maybe disappears, so I just said I've got other stuff to do, so I just went straight for the complaint as far as that." (*Id.*, p. 22). As for the March 21, 2017 grievance, Lacour testified: "I sent that out and I was just waiting for responses on that one. So, it was like different stuff was disappearing and—so I just went for the complaint." (*Id.*). He further stated that he "got a little information from other inmates as far as Menard Correctional Center throwing grievances away . . . so I took advice from a couple of inmates that were filing lawsuits, and they said, you know, if you don't get a response in a few weeks, just file a straight complaint. So, I went as far as that." (*Id.*, p. 23).

III.   **The Report and Recommendation**

Based on the foregoing, Magistrate Judge Wilkerson concluded that the grievance process was unavailable to Lacour and, therefore, Defendants had not met their burden of proving Lacour failed to exhaust his administrative remedies.

---

[4] Magistrate Judge Wilkerson referred to Lacour receiving the response on April 4, 2017, but that is the date the counselor received the grievance. The counselor responded on April 18, 2017.

Magistrate Judge Wilkerson reasoned that Lacour sent one of his grievances to the law library along with his witness affidavits to the law library "to be forwarded to the ARB, but never received the documents back." Magistrate Judge Wilkerson noted that he found "Lacour's statements regarding his attempts to appeal his grievance credible and notes that what happens to documents once an inmate hands them to prison staff is beyond that prisoner's control." Magistrate Judge Wilkerson also found that Lacour "was consistent that he attempted to send at least one of the grievances to the ARB through the library but that grievance disappeared." And, while Lacour's May 8, 2017 letter was sent to the ARB *after* his original complaint was filed in this case, the original complaint was voided when Lacour filed his amended complaint. Magistrate Judge Wilkerson found the May 8, 2017 letter "to be evidence of the unavailability of the grievance procedure to Lacour, rather than evidence of actual exhaustion." Based on this information, Magistrate Judge Wilkerson concluded that Lacour's grievances were either ignored or interfered with by the prison officials, and his attempts to receive a review by the ARB were similarly either ignored or rejected. Thus, the grievance process was unavailable to Lacour, and he is deemed to have exhausted his administrative remedies.

IV.     **Defendants' Objection**

Defendants object to Magistrate Judge Wilkerson's Report and Recommendation, arguing that Lacour did not wait for a response from either the institution or the Administrative Review Board before filing his complaint directly with the Court. Defendants argue that while Magistrate Judge Wilkerson found the grievance process

unavailable to Lacour, no one prevented him from properly exhausting his administrative remedies. Defendants also point out that the date Lacour filed his initial complaint, May 1, 2017, is the relevant date for purposes of exhaustion—not the date the amended complaint was filed. Because Lacour did not attempt to send any grievance to the ARB prior to filing this lawsuit, he did not complete the required exhaustion procedure, and Defendants are entitled to summary judgment.

V.      Analysis

The Court agrees with Defendants both as to the effective date of the Complaint as well as Lacour's failure to exhaust his March 21, 2017 grievance. The evidence in the record indicates Lacour sent this grievance to the grievance officer, who instructed him to begin the process with his counselor. Lacour did that and received a response from the counselor on April 18, 2017. Lacour testified that he then sent the grievance to the grievance officer within a week, but he did not wait for a response before filing this lawsuit on May 1, 2017. Thus, his March 21, 2017 grievance was unexhausted.

Defendants' argument with regard to Lacour's emergency grievance, however, must fail. Lacour asserts he also wrote the emergency grievance on March 21, 2017, and sent it to Warden Lashbrook. She determined the grievance did not constitute an emergency and returned it to Lacour. At that point, Lacour sent the returned grievance to the law library for copies, but the law library never received the documents.

A plaintiff is only required exhaust administrative remedies that are actually available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citing 42 U.S.C. § 1997e(a)); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (finding exhaustion was

unavailable to prisoner who claimed to have filed a grievance that prison officials lost and was never received by the ARB). Where the prisoner "properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies." *Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016) (quoting *Dole*, 438 F.3d at 811).

If prison officials threw away or lost Lacour's emergency grievance, then administrative remedies were unavailable to him. Defendants have not disputed Lacour's testimony that he filed an emergency grievance with the Warden, who returned the grievance as a non-emergency, or that he submitted the rejected emergency grievance to the law library for copies but that the law library never received it. Thus, construing the facts in the light most favorable to Lacour, it appears that the prison lost his emergency grievance, making an appeal to the ARB impossible.[5]

Once the prison lost Lacour's grievance, the exhaustion process became unavailable to him, as he could no longer appeal the denial of his grievance to the ARB. Lacour's May 8, 2017 letter to the ARB, where he attached a hand-written copy of his emergency grievance was unnecessary; neither the Illinois Administrative Code nor relevant case law requires a prisoner to submit a handwritten copy of a grievance or a letter explaining the situation to the ARB once prison officials have mishandled a grievance. Thus, Lacour is deemed to have exhausted his emergency grievance.

The next question is which of Lacour's claims were exhausted in the emergency

---

[5] The Court further notes that it cannot fault Lacour for wanting to make copies of his grievance. *See Pyles*, 829 F.3d at 867 ("[G]rievances and other paperwork are not infrequently lost in the prison administrative system. It was thus reasonable for [an inmate] to take the precaution of making a copy of his grievance."); *but see Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (desire to make a photocopy was not good cause for submitting grievance 41 days after the deadline).

grievance. A grievance must include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint . . . [or] as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE 504.810(b). Here, the handwritten copy of the grievance clearly exhausts Lacour's Eighth Amendment claims against Defendants in Counts 1 through 4. The Court further finds that Lacour set out sufficient facts in his grievance to put the prison on notice of his conspiracy and intentional infliction of emotional distress claims. Thus, Lacour has sufficiently exhausted the claims identified in the Court's threshold order.

## CONCLUSION

For these reasons, the Court **OVERRULES** Defendants' objection (Doc. 63) and **ADOPTS** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 59). Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 49) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   May 24, 2018

                                                                            *Nancy J. Rosenstengel*
                                                                            _____
                                                                            **NANCY J. ROSENSTENGEL**
                                                                            **United States District Judge**